UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| TIM and JESSICA McCORMICK, INDIVIDUALLY and as PARENTS and NEXT FRIENDS of D.M., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 3:06-cv-64-WGH-RLY |
| DONALD E. KISSEL and SARAH W. KISSEL, | ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

**Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Defendants' Motion to Dismiss filed May 12, 2006. (Docket Nos. 10-11).[1] Plaintiffs filed their Memorandum Opposing Motion to Dismiss on June 15, 2006. (Docket No. 17). Defendants filed their Reply Brief on July 10, 2006. (Docket No. 21).

**Background**

Plaintiffs Tim McCormick and Jessica McCormick filed suit individually and as parents and next friends of their infant son, D.M. (Complaint ¶ 2). Plaintiffs allege that they entered into a lease with Defendants, Donald E. Kissel and Sarah W. Kissel

---

[1] The parties consented to Magistrate Judge jurisdiction in this case in their Case Management Plan filed July 5, 2006. (Docket No. 20). District Judge Richard Young entered an Order of Reference on July 11, 2006. (Docket No. 22).

on November 9, 2004, to lease property owned by Defendants located at 213 Taylor Avenue in Evansville, Indiana. (Complaint ¶ 1). Plaintiffs contend that, at the time the lease was executed, Defendants were aware that a very young child would be living at the residence. (Complaint ¶ 4). According to Plaintiffs, several layers of paint were pealing in both the interior and exterior, and the property's paint cover was in significant disrepair. (Complaint ¶ 5). Plaintiffs moved out of the leased property on July 1, 2005. (Complaint ¶ 11). Based on tests conducted by the Vanderburgh County Health Department on July 20, 2005 and September 30, 2005, D.M.'s blood contained significant amounts of lead. (Complaint ¶¶ 9-10). Plaintiffs allege that D.M. has been subjected to lead poisoning as a direct and proximate result of living at the leased property, and that lead poisoning has been found to contribute to significant brain damage that is permanent and irreparable. (Complaint ¶¶ 12-13). Plaintiffs argue that D.M. will require special assistance and therapy for many years, and that he has been permanently and seriously injured because of the lead paint exposure. (Complaint ¶ 14).

Plaintiffs filed suit claiming a violation of the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"), 42 U.S.C. § 4852d(a). Plaintiffs contend that, based on RLPHRA and related regulations, the rental property was "target housing," and because Defendants were leasing such "target housing" to Plaintiffs, they were required to provide an EPA approved lead hazard information disclosure. (Complaint ¶¶ 21-26). Plaintiffs further contend that they are entitled to treble damages as well as costs and attorney's fees because Defendants knowingly violated RLPHRA. (Complaint ¶¶ 28-32).

Plaintiffs also claim a violation of Indiana's Residential Landlord-Tenant statutes. IND. CODE § 32-31-3 *et seq.* Plaintiffs allege that the property was not delivered in a safe, clean and habitable condition and did not comply with all applicable health and housing codes. (Complaint ¶¶ 45-48). According to Plaintiffs, Defendants' actions were in violation of the Indiana Code and Plaintiffs are entitled to recover actual damages, consequential damages, attorney's fees, court costs, injunctive relief and any other remedy appropriate under the circumstances. (Complaint ¶ 49).

Defendants filed the pending Motion to Dismiss arguing that Plaintiffs' RLPHRA claim on behalf of their minor son must be dismissed because D.M. was not a "purchaser" or "lessee" as defined by the Act, and he, therefore, does not have standing to sue under RLPHRA. Defendants also claim that Plaintiffs' Complaint does not state a cause of action under the Indiana Residential Landlord-Tenant statutes because Plaintiffs' Complaint fails to allege facts sufficient to support a claim.

The Court concludes that, for the following reasons, Defendants' Motion to Dismiss should be **GRANTED, in part,** and **DENIED, in part.**

## Legal Standard

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations contained in the complaint, as well as the inferences reasonably drawn therefrom. *See Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir. 1994). A dismissal is only appropriate if the plaintiff can establish no set of facts, even if hypothesized,

consistent with the allegations of its complaint that would entitle it to relief. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994), *cert. denied,* 516 U.S. 1159 (1996). Moreover, the court must only examine the complaint, and not the merits of the lawsuit. *See Autry v. Northwest Premium Services, Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998).

## Analysis

**1.    D.M. Does Not Lack Standing to Pursue a Claim under RLPHRA**

Defendant's first argument is that the portion of Plaintiffs' claim in Count I of their Complaint alleging a cause of action on behalf of D.M. must be dismissed because D.M. does not have standing to sue.

**A.    RLPHRA**

RLPHRA was enacted in 1992 to develop the means to "eliminate lead-based paint hazards in all housing as expeditiously as possible"[2] while also educating the public about the "hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." 42 U.S.C. §§ 4851a(1) & (7). In light of these needs, Congress provided disclosure requirements for lessors or sellers of certain property. These disclosure provisions of RLPHRA specifically state that the Secretary of the Department of Housing and Urban Development ("HUD") and the Administrator of the Environmental Protection Agency ("EPA") shall promulgate regulations concerning the disclosure of lead-based paint hazards in "target

---

[2] A lead-based paint hazard includes "any condition that causes exposure to lead from lead-contaminated dust, lead-contaminated soil, lead-contaminated paint that is deteriorated or present in accessible surfaces, impact surfaces, or friction surfaces that would result in adverse human health effects. . . ." 42 U.S.C. § 4851b(15).

housing," defined as housing built prior to 1978 with limited exception, which is offered for sale or lease.  §§ 4851b(27) & 4852d(a)(1).  RLPHRA provides that:

> . . . The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall--
> (A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [15 U.S.C.A. § 2686];
> (B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor; and
> (C) permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

§ 4852d(a)(1).  Violations of RLPHRA can lead to penalties including a monetary penalty for knowingly violating the statute, an injunction enforced by the Secretary of HUD, civil liability for knowingly violating the statute in "an amount equal to 3 times the amount of damages incurred by [a purchaser or lessee]," and cost and attorney's fees.  § 4852d(b).

### B.     Standing to Sue Under RLPHRA

Defendants are correct when they argue that RLPHRA does not explicitly state that a tenant's minor child has standing to sue for failure to provide the requisite disclosure of lead-based paint hazards.  Additionally, the regulations promulgated in accordance with RLPHRA define lessee as "any entity that enters into an agreement to lease, rent, or sublease target housing, including but not limited to individuals, partnerships, corporations, trusts, government agencies, housing agencies, Indian tribes, and nonprofit organizations."  24 C.F.R. § 35.86.

Two Circuit Courts of Appeals have examined the issue of whether the language in RLPHRA, and its accompanying regulations, confers standing on a minor child, and have come to different conclusions. *See Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs,* 426 F.3d 241 (3rd Cir. 2005); *Mason ex rel. Heiser v. Morrisette,* 403 F.3d 28 (1st Cir. 2005). In *Heiser*, the First Circuit simply concluded that a minor child did not qualify as a lessee and, therefore, could not enforce the disclosure provisions of RLPHRA. *Heiser,* 403 F.3d at 31-32. In *Cudjoe*, the Third Circuit came to the conclusion that a minor child's claim would not be dismissed because "a person without express statutory standing may still have standing to sue if the person meets the minimum requirements for Article III standing as well as the additional elements of prudential standing." *Cudjoe,* 426 F.3d at 250. The Seventh Circuit has not yet had the occasion to visit this issue.

We conclude that, because an individual's standing to sue may go beyond what is explicitly stated in a statute, D.M. does have standing under RLPHRA. An individual may demonstrate standing to sue by meeting the standing requirements of both Article III of the United States Constitution and prudential standing. For Article III standing, an individual must have suffered an "injury in fact" that is actual, concrete and particularized, which has a causal connection with Defendants' actions, and is redressable in court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The additional requirement of prudential standing requires Plaintiffs to show that D.M.'s injury falls within "the 'zone of interests' sought to be protected by the statutory provision whose violation

forms the legal basis for [their] complaint." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

In this case, Congress has clearly created a private right of action under RLPHRA. A lessee may sue for three times the damages incurred as a result of a lessor's failure to make the appropriate disclosures provided in 42 U.S.C. § 4852d(a)(1). Hence, D.M.'s alleged injury (lead poisoning) is an actual, concrete, particularized injury which is redressable in court, and there is a causal connection between Defendants' failure to make the disclosures required under RLPHRA and D.M.'s injury.

Prudential standing also exists because D.M. falls within the zone of interests sought to be protected by Congress under RLPHRA. Congress explained that a lessee may sue a lessor for failure to make the proper lead-based paint hazard disclosures. And, the definition of a lessee includes an "individual," and does not explicitly exclude children. D.M. is an individual who, but for the legal impediment of age, would have been a signatory to the lease. The Court also notes that the language of RLPHRA is replete with references to protecting children from lead-based paint hazards. In the Findings section, Congress noted the following:

> The Congress finds that–
> (1) low-level lead poisoning is widespread among American **children**, afflicting as many as 3,000,000 **children** under age 6, with minority and low-income communities disproportionately affected;
> (2) at low levels, lead poisoning in **children** causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems;

>	(3) pre-1980 American housing stock contains more than 3,000,000 tons of lead in the form of lead-based paint, with the vast majority of homes built before 1950 containing substantial amounts of lead-based paint;
>	(4) the ingestion of household dust containing lead from deteriorating or abraded lead-based paint is the most common cause of lead poisoning in **children**;
>	(5) the health and development of **children** living in as many as 3,800,000 American homes is endangered by chipping or peeling lead paint, or excessive amounts of lead-contaminated dust in their homes;
>	(6) the danger posed by lead-based paint hazards can be reduced by abating lead-based paint or by taking interim measures to prevent paint deterioration and limit **children's** exposure to lead dust and chips;
>	(7) despite the enactment of laws in the early 1970's requiring the Federal Government to eliminate as far as practicable lead-based paint hazards in federally owned, assisted, and insured housing, the Federal response to this national crisis remains severely limited; and
>	(8) the Federal Government must take a leadership role in building the infrastructure–including an informed public, State and local delivery systems, certified inspectors, contractors, and laboratories, trained workers, and available financing and insurance–necessary to ensure that the national goal of eliminating lead-based paint hazards in housing can be achieved as expeditiously as possible.

42 U.S.C. § 4851 (emphasis added).  By placing such an emphasis on a need to protect children, Congress clearly indicated that D.M. was in the zone of interests sought to be protected by RLPHRA.  Children's injuries from exposure to lead-based paint were the exact injuries that Congress intended to be abated by the passing of RLPHRA.  For this Court to rule that only Tim McCormick and Jessica McCormick had standing to sue, we would be ruling that the only damages recoverable would be for the medical care of D.M. until the McCormicks no longer had to take care of him.  That would prohibit taking into consideration any of the permanent injuries D.M. might have suffered which were the types of injuries (permanent neurological

damage, learning disabilities, impaired hearing, etc.) that Congress explicitly sought to abate. We, therefore, conclude that D.M. was within the zone of interests sought to be protected by Congress.

Because Plaintiffs have satisfied the requirements of both Article III and prudential standing, Defendants' Motion to Dismiss must be **DENIED.**

**2.    Plaintiffs Have Not Stated a Cause of Action Under Indiana's Residential Landlord-Tenant Statutes**

The Indiana Residential Landlord-Tenant statutes place certain specific obligations on a landlord. Section 32-31-8-5 of the Indiana Code states that:

> A landlord shall do the following:
> (1) Deliver the rental premises to a tenant in compliance with the rental agreement, and in a safe, clean, and habitable condition.
> (2) Comply with all health and housing codes applicable to the rental premises.
> (3) Make all reasonable efforts to keep common areas of a rental premises in a clean and proper condition.
> (4) Provide and maintain the following items in a rental premises in good and safe working condition, if provided on the premises at the time the rental agreement is entered into:
> > (A) Electrical systems.
> > (B) Plumbing systems sufficient to accommodate a reasonable supply of hot and cold running water at all times.
> > (C) Sanitary systems.
> > (D) Heating, ventilating, and air conditioning systems. A heating system must be sufficient to adequately supply heat at all times.
> > (E) Elevators, if provided.
> > (F) Appliances supplied as an inducement to the rental agreement.

IND. CODE § 32-31-8-5. However, there are prerequisites to a tenant filing suit. According to IND. CODE § 32-31-8-6(b), a tenant is prohibited from bringing suit unless:

> (1) The tenant gives the landlord notice of the landlord's noncompliance with a provision of this chapter.
> (2) The landlord has been given a reasonable amount of time to make repairs or provide a remedy of the condition described in the tenant's notice.  The tenant may not prevent the landlord from having access to the rental premises to make repairs or provide a remedy to the condition described in the tenant's notice.
> (3) The landlord fails or refuses to repair or remedy the condition described in the tenant's notice.

IND. CODE § 32-31-8-6(b).

In this instance, Plaintiffs' Complaint contains no allegations that Plaintiffs gave Defendants the notice required in IND. CODE § 32-31-8-6(b) or that Plaintiffs, after providing Defendants with notice, gave Defendants a reasonable amount of time to remedy the problems.  Absent such allegations in the Complaint, the Court concludes that Plaintiffs have failed to state a claim under the Indiana Residential Landlord-Tenant statutes, and Count II of Plaintiffs' Complaint must be **DISMISSED.**

## Conclusion

For the reasons outlined above, Defendants' Motion to Dismiss is **GRANTED, in part, and DENIED, in part.**  The entirety of Count I of Plaintiffs' Complaint remains, while Count II of Plaintiffs' Complaint is **DISMISSED**.

**SO ORDERED.**

**Dated:** September 18, 2006

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Michael R. Bain
HUME SMITH GEDDES GREEN & SIMMONS
mbain@humesmith.com

Adam A. Carroll
HUME SMITH GEDDES GREEN & SIMMONS
acarroll@humesmith.com

Timothy Arthur Rowe
ROWE & HAMILTON
trowelaw@aol.com